IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

| | | |
|---|---|---|
| THE UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-215 |
| | ) | |
| | ) | |
| ZHE "JOHN" LIU, and | ) | |
| GL PAPER DISTRIBUTION, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

The United States, through its undersigned attorneys, brings this action and alleges the following:

1. This is an action to enforce monetary civil penalties, pursuant to 19 U.S.C. § 1592, relating to imported steel wire hangers that were transshipped through Malaysia to avoid the payment of antidumping duties (ADD) on steel wire hangers imported from the People's Republic of China (PRC).

2. Pursuant to 28 U.S.C. § 1582, this Court possesses exclusive jurisdiction to entertain this action.

3. Defendant Zhe "John" Liu (Liu) was a Florida resident who resided at 1448 Holts Grove Circle, Winter Park, Florida. He operated, directed, was an agent of, and handled the importation of merchandise for multiple companies incorporated in Florida, including defendant GL Paper Distribution, LLC (GL Paper), NC Supply, Inc., NC Supply Group, LLC, CEK Group, LLC (CEK), Garment Cover Supply, LLC (GCS), and AB MA Distribution Corp. (ABMA), all companies through which LIU directed and abetted the importation of steel wire hangers.

4. Defendant GL Paper Distribution, LLC, was incorporated in Florida on June 30, 2016, and listed a business address of 1840 SW 22nd Street, PMB 4-7076, Miami, Florida. From on or about February 6, 2017, through on or about August 15, 2017, GL Paper filed customs entries with the United States for steel wire hangers that it claimed were imported from Malaysia. GL Paper was dissolved on August 15, 2017.

5. NC Supply, Inc., was incorporated in Florida on November 17, 2004, and listed a business address of 1448 Holts Grove Circle, Winter Park, Florida. From on or about May 10, 2005, through on or about January 8, 2011, NC Supply filed customs entries with the United States for steel wire hangers imported from the PRC. In or around 2014, U.S. Customs and Border Protection (CBP) placed NC Supply on nationwide sanction for unpaid duties.

6. NC Supply Group, LLC, was incorporated in Florida on October 6, 2010, and listed a business address of 1448 Holts Grove Circle, Winter Park, Florida. From on or about March 4, 2012, through on or about August 23, 2012, NC Supply Group filed customs entries with the United States for steel wire hangers imported from PRC. NC Supply Group was dissolved on September 12, 2012.

7. CEK Group, LLC, was incorporated in Florida on January 9, 2012, and listed a business address of 1448 Holts Grove Circle, Winter Park, Florida. From on or about April 18, 2019 through on or about November 11, 2020, CEK filed customs entries with the United States for steel wire hangers purportedly imported from the Kingdom of Thailand. CEK was dissolved on December 17, 2020.

8. Garment Cover Supply, LLC, was incorporated in Florida on November 27, 2013, and listed a business address of 707 E Colonial Dr, Ste B-110, Orlando, Florida. From on or about September 12, 2014 through on or about February 14, 2017, GCS filed customs entries

with the United States for steel wire hangers purportedly imported from Malaysia. GCS was dissolved on February 15, 2017.

9. ABMA Distribution Corp. was incorporated in Florida on February 20, 2018, and listed a mailing address of 1448 Holts Grove Circle, Winter Park, Florida. From on or about May 7, 2018 through on or about April 25, 2019, ABMA filed customs entries with the United States or served as the consignee (*i.e.*, the party receiving merchandise) for steel wire hangers purportedly imported from the Republic of India and Thailand. ABMA was dissolved on January 17, 2020.

10. Beginning in or around November 2004, Liu formed companies that he used to import steel wire hangers manufactured in PRC into the United States. Steel wire hangers are sold throughout the United States, and are primarily used in dry cleaning businesses. Liu was knowledgeable about the U.S. Customs importation process, and personally engaged in the process of submitting documents and records supporting the entry of these hangers into United States.

11. On July 31, 2007, a wire hanger manufacturer in Alabama filed a petition with the International Trade Commission (ITC) on behalf of the domestic industry that produces steel wire hangers, alleging that industry was materially injured or threatened with material injury by reason of less-than-fair-value imports of steel wire garment hangers from PRC. Among other things, the petition detailed how these unfair trade practices had decimated the steel wire hanger manufacturing industry, leading to the closure of many manufacturing facilities across the United States and the loss of hundreds of U.S. jobs.

12. On October 18, 2007, the ITC issued its preliminary determination that an industry in the United States was materially injured by imports of steel wire hangers. *See Steel Wire Garment Hangers From China*, 72 Fed. Reg. 59112 (ITC Oct. 18, 2007).

13. On August 8, 2008, the U.S. Department of Commerce (DOC) announced its final determination on its investigation of unfair trade practices related to steel wire hangers imported from PRC. For the time period at issue, DOC set a "China-wide" antidumping duty rate of 186.98 percent for steel wire hangers imported from PRC.

14. After the imposition of the antidumping duty rate for steel wire hangers in 2008, Liu, through his companies NC Supply and NC Supply Group, initially continued to import steel wire hangers from PRC. Initially, Liu truthfully declared that these hangers were manufactured in PRC and paid the applicable antidumping duties. However, in or around 2014, CBP placed NC Supply on nationwide sanction for unpaid duties.

15. Beginning in or around 2011 and through 2014, Liu communicated with third parties about the effect of the PRC antidumping duties and possibly importing steel wire hangers from countries other than PRC. Liu then set up new companies to import hangers manufactured in PRC that were transshipped through other countries to avoid paying the PRC antidumping duty. Liu formed or caused to be formed companies in the names of other individuals to conceal his operation of those companies.

16. In 2012, Liu formed CEK. In 2013, Liu participated in a DOC "New Shipper Review" of two PRC manufacturers of steel wire hangers, representing himself as president and employee of CEK. During this review, Liu demonstrated his thorough knowledge of antidumping duties.

17. In November 2013, Liu formed or caused the formation of GCS. Although Liu was the manager of GCS, Wang Yan was listed on the company's public filings as the Chief Operating Officer. Beginning in September 2014, Liu caused GCS to introduce, or attempt to introduce, steel wire hangers into the commerce of the United States, claiming that they were manufactured in Malaysia. These steel wire hangers were, in fact, manufactured in PRC. By

falsely declaring that these hangers were manufactured in Malaysia, GCS avoided paying the antidumping duty rate on steel wire hangers from PRC.

18. Beginning in June 2016, Liu formed or caused the formation of GL Paper. GL Paper's public documents did not disclose Liu's involvement with the company. Liu, however, controlled and directed the operations of the company and its entry of steel wire hangers into the United States. From February through August 2017, Liu caused GL Paper to introduce, or attempt to introduce, steel wire hangers into the commerce of the United States, claiming that they were manufactured in Malaysia. These steel wire hangers were, in fact, manufactured in PRC. Liu and GL Paper did not exercise reasonable care to ensure the country of origin declared for these steel wire hangers was accurate. By falsely declaring that these hangers were manufactured in Malaysia, GL Paper avoided paying the antidumping duty rate on steel wire hangers from PRC. The time, place, ports of entry, and other details relating to these entries are identified in Exhibit A to this complaint.

19. In May 2017, a domestic wire hanger manufacturer in Alabama filed an Enforce and Protect Act (EAPA) allegation against GL Paper. That same month, CBP sent a questionnaire to GL Paper requesting information about the purported Malaysian manufacturers of the hangers imported by GL Paper. In July 2017, the U.S. Government conducted a site visit associated with the purported manufacturers and discovered that the companies were not manufacturing wire hangers.

20. Less than three weeks after the Government's site visit in Malaysia, in August 2017, GL Paper dissolved as a corporation.

21. Six months after GL Paper's dissolution, Liu formed, or caused the formation of, ABMA. From May 2018 through April 2019, Liu caused ABMA to introduce, or attempt to introduce, steel wire hangers into the commerce of the United States, or serve as consignee for

wire hangers introduced into the commerce of the United States, claiming that they were manufactured in India and Thailand. These steel wire hangers were, in fact, manufactured in PRC. By falsely declaring that these hangers were manufactured in India and Thailand, ABMA avoided paying the antidumping duty rate on steel wire hangers from PRC.

22. One week after ABMA's last importation of steel wire hangers, beginning in April 2019, and through November 2020, Liu caused CEK to introduce, or attempt to introduce, steel wire hangers into the commerce of the United States, claiming that they were manufactured in Thailand. These steel wire hangers were, in fact, manufactured in PRC. By falsely declaring that these hangers were manufactured in Thailand, CEK avoided paying the antidumping duty rate on steel wire hangers from PRC. CEK was dissolved on December 17, 2020.

23. On March 23, 2022, CBP issued pre-penalty notices to Liu and GL Paper, at a culpability level of negligence, for entries described in paragraph 18 above.

24. CBP received no response from GL Paper.

25. On April 5, 2022, Liu, through counsel, submitted a response to the pre-penalty notice sent to him. In his response, Liu claimed that he had no involvement with GL Paper's operations. On April 7, 2022, Liu, through counsel, gave an oral reply to the proposed penalty, claiming that LIU had no involvement with GL Paper's operations.

26. On May 2, 2022, CBP issued penalty notices to Liu and GL Paper, jointly and severally, at a culpability level of negligence in the amount of $7,271,233.19, for entries described in paragraph 18 above.

27. On May 16, 2022, Liu filed a petition with CBP seeking cancellation of the penalty, and claiming that Liu was not involved with GL Paper and "was not involved in the preparation of the entry or related customs documents." Liu averred that his company, NC Supply, only purchased these hangers from GL Paper.

28. On June 17, 2022, CBP denied Liu's petition and forwarded the petition decision to LIU. On June 24, 2022, Liu filed a supplemental petition. CBP denied the supplemental petition on June 28, 2022. Accordingly, CBP has exhausted all administrative remedies.

## COUNT I

29. The allegations contained in paragraphs 1 through 28 are restated and incorporated by reference.

30. The acts described in paragraphs 10 through 22 were committed as the result of negligence by Liu and GL Paper, by failing to exercise the degree of reasonable care and competence expected from a person in the same circumstances, in violation of 19 U.S.C. § 1592(a)(1)(A) & (B).

31. By reason of these negligent violations, pursuant to 19 U.S.C. § 1592(c)(3), Liu and GL Paper are jointly and severally liable to the United States for penalties in the amount of $977,569.10. The penalty amount is equal to the domestic value of steel wire hanger entries made by GL Paper from July 24, 2017, to August 8, 2017, for which there was a total loss of revenue of $556,808.48.

32. No part of the $977,569.10 penalty having been paid, defendants Liu and GL Paper remain jointly and severally liable to the United States for the entire $977,569.10 penalty, plus interest as provided by law.

## PRAYER FOR RELIEF

**WHEREFORE**, the United States respectfully requests that the Court enter judgment against defendants Zhe "John" Liu, and GL Paper Distribution, LLC, jointly and severally, for violations of section 1592(a) at a culpability level of negligence, in the amount of $977,569.10 in penalties, pursuant to 19 U.S.C. § 1592(c)(3), plus interest and costs as provided by law, and such other and further relief as may be just and appropriate.

|  | Respectfully submitted, |
|---|---|
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
|  | FRANKLIN E. WHITE, JR.<br>Assistant Director |
| OF COUNSEL:<br>STEVEN J. HOLTKAMP<br>Staff Attorney<br>U.S. Customs and Border Protection<br>Office of the Assistant Chief Counsel<br>610 South Canal Street, Suite 767<br>Chicago, Illinois 60607<br><br>June 21, 2022 | */s/ William Kanellis*<br>WILLIAM KANELLIS<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>1100 L Street, NW, Suite 10000<br>Washington, D.C.  20009<br>202 532 5749<br><br>Attorneys for Plaintiff |