IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | | |
|---|---|---|
| THE UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-215 |
| | ) | |
| | ) | |
| ZHE "JOHN" LIU, and | ) | |
| GL PAPER DISTRIBUTION, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## THE UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE

The United States, through its undersigned attorneys, respectfully submits its opposition to the motion to strike (Mot., ECF No. 6) filed by ZHE "JOHN" LIU.

The complaint details how LIU, through GL Paper Distribution, LLC (GL PAPER), falsely declared that steel wire hangers imported by GL PAPER were manufactured in Malaysia, and avoided paying the antidumping duty rate for steel wire hangers imported from their true place of manufacture, the People's Republic of China (PRC).  The complaint depicts a pattern of conduct by LIU, wherein he repeatedly (1) caused an importer of record to be formed; (2) caused this company to import steel wire hangers from the PRC; (3) caused the submission of a false declaration that these hangers were manufactured in a country other than PRC; (4) discontinued the company's importations of steel wire hangers; and (5) opened a new company through which he caused the continued importation of wire hangers.  This pattern of behavior demonstrated, among other things, LIU's familiarity with U.S. customs rules and practices, his knowledge of the wire hanger industry and its practices, and his intent to continue to import wire hangers notwithstanding customs issues.  All together, these circumstances demonstrate that the entries made at GL PAPER by LIU were not made with reasonable care.  *See* 19 U.S.C. § 1592(a)(1).

LIU moves to strike 12 paragraphs from the complaint, citing Rule 12(f) of the Rules of this Court (USCIT R.), claiming that the allegations contained therein "have no impact on negligence," Mot. at 3, and are "potentially prejudicial." Mot. at 4. LIU also argues that the Government did not make the claims in "good faith." Mot. at 5.

As discussed below, LIU's motion fails to meet the standard set by Rule 12(f). The referenced paragraphs in the complaint are not "redundant, immaterial, impertinent, or scandalous." To the contrary, these paragraphs are directly relevant to the *factum probandum* – LIU's negligence – because they evidence LIU's ample knowledge of U.S. customs rules, the wire hanger industry, and LIU's persistent resolve to import wire hangers without regard to country-of-origin issues experienced by his prior companies. These circumstances surround LIU's operation of GL PAPER, and will sit at the heart of the Government's case in chief because LIU has been charged with negligence: at trial, LIU will be required to "affirmatively demonstrate that [he] exercised reasonable care under the[se] circumstances." *United States v. Ford Motor Co.*, 463 F.3d 1267, 1279 (Fed. Cir. 2009).

I. **The Complaint Depicts Liu's Significant Experience**

Among other things, the complaint describes (1) LIU's experience with the wire hanger industry and familiarity with antidumping duties associated with wire hangers, (2) LIU's ample experience importing wire hangers through U.S. customs, and (3) LIU's pattern of forming a succession of companies with a near-singular purpose – to import steel wire hangers.[1]

---

[1] These companies include NC Supply, Inc. (formed November 2004, imported May 2005 through January 2011), ¶ 5; NC Supply Group, LLC (formed October 6, 2010, imported from March to August 2012), ¶ 6; Garment Cover Supply, LLC (formed November 27, 2013, imported from September 2014 through February 14, 2017), ¶ 8; GL Paper Distribution, LLC (formed in June 2016, imported from February 2017 through August 2017), ¶¶ 3, 18; AB MA Distribution Corp. (ABMA) (formed in February 2018, imported from May 2018 through April 2019), ¶ 9; CEK Group, LLC (CEK) (formed January 2012, imported from April 2019 through November 11, 2020); ¶ 6.

As discussed below, at the trial of this negligence claim, LIU will be required to "affirmatively demonstrate that [he] exercised reasonable care under the circumstances." *United States v. Ford Motor Co.*, 463 F.3d 1267, 1279 (Fed. Cir. 2009). The "circumstances" at issue include LIU's operation and control of other importers of wire hangers named in the complaint, LIU's knowledge of customs rules, LIU's knowledge of the steel wire hanger industry, LIU's pattern of opening and closing companies to import steel wire hangers (and conceal his involvement at those companies), and LIU's plan and demonstrated intent to import wire hangers regardless of customs issues experienced by his prior companies. Each of these issues is relevant to the question of whether LIU acted negligently, – *i.e.*, exercised "reasonable care."

**II.     Discussion Of Applicable Law**

    A.     Rule 12(f)

Under Rule 12(f) (which is identical to the Federal Rule of Civil Procedure), this Court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike under Rule 12(f) "are not favored by the courts." *Beker Industries Corp. v. United States*, 585 F. Supp. 663, 665 (Ct. Int'l Trade 1984) (quoting *Lunsford v. United States*, 570 F.2d 221 (8th Cir. 1977), and *United States v. 416.81 Acres of Land*, 514 F.2d 627 (7th Cir. 1975)). As this Court has opined, a motion to strike "is recognized to be a drastic remedy." *Beker Industries Corp.,* 585 F. Supp. at 665 (quoting *Augustus v. Board of Public Instruction*, 306 F.2d 862 (5th Cir. 1962), and *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819 (6th Cir. 1953)). As this remedy is "drastic" and "often is sought by the movant simply as a dilatory or harassing tactic," *see* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed.), "[s]triking a party's pleading . . . is an extreme and disfavored measure," *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citing *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000)).

LIU broadly assails the subject paragraphs of the Government's complaint as "potentially prejudicial" and irrelevant. Mot. at 4. Rule 12(f) does not include the term "potentially prejudicial," but presumably, LIU intends to argue that certain allegations in the complaint are "scandalous." Allegations are "scandalous if "bearing reproachfully upon the moral character of individuals, or allegations bearing no possible relation to the controversy or that may cause the objecting party prejudice." *Arunachalam v. International Business Machines Corporation*, 989 F.3d 988 (Fed. Cir. 2021); *SEC v. Lauer*, No. 03-80612-CIV-MARRA, 2007 WL 1393917, at *2 (S.D. Fla. Apr. 30, 2007) (a scandalous allegation " unnecessarily reflects on the moral character of an individual or state anything in repulsive language that detracts from the dignity of the court.") (quoting 2 MOORE'S FEDERAL PRACTICE § 12.37[3] at 12–97). "[I]t is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." *In re Gitto Global Corp.*, 422 F.3d 1, 12 (1st Cir. 2005) (citations omitted).

Otherwise, LIU argues that some of the subject paragraphs are "irrelevant." Mot. at 2, 4, 5, and 6. This argument falls within the ambit of "immaterial" or "impertinent." USCIT R. 12(f). "An allegation which has no value in developing the issues in a case is 'immaterial.'" *Oaks v. City of Fairhope*, 515 F. Supp. 1004, 1032 (S.D. Ala. 1981) (quotation omitted). An "inpertinent" allegation is not "relevant to the issues involved in the action and which could not be put in issue or be given in evidence between the parties." *Sanders v. Reg'l Fin. Corp. of S.C.*, No. 1:17-293-CMC-SVH, 2017 WL 3026069, at *2 (D.S.C. 2017).

B.  Negligence Claims Under Section 1592

Pursuant to section 1592 of title 19, United States Code, negligence "arises out of 'an act or acts (of commission or omission) done through either the failure to exercise the degree of reasonable care and competence expected from *a person in the same circumstances* in

4

ascertaining the facts or in drawing inferences therefrom[.]" *United States v. Ford Motor Co.*, 395 F. Supp.2d 1190, 1207–08 (Ct. Int'l Trade 2005) (quoting 19 C.F.R. pt. 171, App. B(B)(1), emphasis supplied), *affirmed by Ford Motor Co.*, 463 F.3d at 1279. For negligence claims, once the Government establishes a material false statement or omission, section 1592 shifts the burden of persuasion to the defendant to demonstrate a lack of negligence. *See* 19 U.S.C. § 1592(e)(4). As the Federal Circuit has explained, this is a fact-based inquiry that turns upon the circumstances of each case: "[C]ustoms has the burden merely to show that a materially false statement or omission occurred; once it has done so, the defendant must affirmatively demonstrate that it exercised reasonable care under the circumstances." *Ford Motor Co.*, 463 F.3d at 1279.

   C. <u>Prior Experience, Knowledge, And Plan Are Relevant To A Negligence Claim</u>

  The Federal Circuit has affirmed that a defendant's prior knowledge of potential violations, or awareness of an issue, is directly relevant to a finding of negligence. In *Ford Motor Co.*, the Government's negligence claim was predicated upon the allegation that Ford failed to identify assists when reporting the value of vehicle components it imported. 395 F. Supp.2d at 1194 & 1208. This Court held that Ford failed to exercise reasonable care, because among other reasons, there existed "uncontroverted evidence that Ford knew that assists start to occur in Ford's major programs sometimes two, three years prior to the good actually being imported into the United States." *Id*. at 1210. Ford's prior knowledge of the existence of assists was relevant to the question of whether, "Ford had exercised reasonable care under the circumstances[.]" *Id*. at 1212.

  The Federal Circuit's view aligns with courts around the country that have recognized the truism that experience and prior knowledge are directly relevant to the question of whether a party acted negligently. *See, e.g., Pleasant v. Miranda,* No. 5:20-cv-00675-JGB (SHK), 2021

WL 829735, at *7 (C.D. Cal. Jan. 25, 2021) ("any complaint investigations, performance evaluations, and disciplinary history of the [defendant city's agents] are relevant to [plaintiff's] negligence claims"); *Regions Bank v. White*, No. 4:06CV01475 JLH, 2009 WL 3148732, at *13 (E.D. Ark. Sept. 24, 2009) ("[P]roof that a defendant had or should have had knowledge of a dangerous condition is relevant under most theories of negligence."); *Kruse v. Iron Range Snowmobile Club*, 890 F. Supp. 681, 687 (W.D. Mich. 1995) ("Constructive notice of the dangerous condition would be relevant only to show negligence."); *Estate of Gaither by and through Gaither v. District of Columbia*, No. 03-01458 (CKK), 2013 WL 12320411, at *4 (D.D.C. Jan. 25, 2013) ("evidence of prior similar incidents allegedly caused by certain dangerous conditions may be relevant in a negligence action to show a defendant's notice or knowledge of those same conditions that allegedly led to the plaintiff's injury.").

      Similarly, courts have refused to strike a complaint's depiction of a defendant's scheme or plan that provides context for the conduct at issue.  For example, a court rejected a defendant's Rule 12(b) motion to strike a complaint's description of the defendant's prior efforts to conceal his involvement with other companies 20 years before because that provided context for the scheme alleged in the complaint:  "merely because a case is 20 years old does not somehow take that information away from plaintiff and the information is supportive of plaintiff's theory of how defendants' scheme operated."  *Doe v. Cin-Lan, Inc.*, No. 08-12719, 2009 WL 1508367, at *2 (E.D. Mich. May 29, 2009); *see also Kisano Trade & Invest Ltd. v. Lemster*, No. 11-852, 2011 WL 5593678, at *11 (W.D. Pa. Sept. 27, 2011) (denying motion to strike where allegations "support a pattern of racketeering activity involving multiple schemes."); *Farris v. U.S. Financial Life Insurance Company*, No. 1:17-cv-417, 2018 WL 2088284, at *7 (S.D. Ohio May 4, 2018) (denying Rule 12(f) motion where allegations "show[ed] Defendant's pattern of conduct.").

### III.     Liu's Motion To Strike Lacks Legal Merit

LIU's motion is bereft of any application of the law of Rule 12(f) to the facts at hand. Rather, LIU offers the vague portent that allegations in the complaint are "prejudicial" or "potentially prejudicial." Mot. at 1, 4, 5, and 6. LIU's argument is more germane to a motion to exclude evidence under Federal Rule of Evidence 403, rather than Rule 12(f). *Cf. United States v. Howard*, 692 F.3d 697, 707 (7th Cir. 2012) ("it is important to keep in mind that all relevant evidence is prejudicial and that evidence must be unfairly prejudicial in order for it to be inadmissible under [Rule 403]"). Nonetheless, as the gist of LIU's argument is that the subject paragraphs are "immaterial" or "scandalous," we respond in kind below.

The exception is paragraph 3, which LIU argues is a "compound allegation alleging 4 functions undertaken by 6 different entities including defendant GL Paper." Mot. at 3. By "compound allegation," LIU appears to argue that the paragraph is "redundant." USCIT R. 12(f). This is not true: paragraph 3 states that LIU "operated, directed, was an agent of, and handled the importation of merchandise for multiple companies" – facts which appear nowhere else in the complaint. Yet, even if true, "the mere presence of redundant material in a pleading does not warrant granting a motion to strike, absent a showing of prejudice to the opposing party. *See Maryland Staffing Services, Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1509 (E.D. Wis. 1996); Wright & Miller, Federal Practice and Procedure: Civil 2d § 1382 at 705–06.

LIU does not explain how paragraph 3 is "compound." Nor does he elaborate upon how the paragraph's description of LIU's role at these companies could prejudice him in any respect. In fact, it does not. Rather, this paragraph fairly depicts LIU's role at these companies as well as his ample experience forming, operating, and importing merchandise through these companies. LIU's role and experience supply and inform the "circumstances" under which he operated as he imported steel wire hangers through GL PAPER. *Ford Motor Co.*, 463 F.3d at 1279.

The remainder of LIU's argument centers upon the notion that paragraphs 5-10, 14, 16-17, 21 and 22, are immaterial or impertinent to the negligence claim against him. Mot. at 3-4. Imbedded *sub silentio* within LIU's use of the term "potentially prejudical" is also the cavil that these allegations are "scandalous." LIU cites to no legal authority – under Rule 12(f) or otherwise – that would support striking any of these paragraphs. To the contrary, these paragraphs supply information that will allow the jury to fairly assess whether LIU exercised "reasonable care" under the circumstances. *Ford Motor Co.*, 463 F.3d at 1279.

Paragraphs 5-10, 14, and 16-17, each parlay LIU's experience in the wire hanger industry, his familiarity with customs issues, and his operation of companies that were alleged to have misstated the country of origin. At a minimum, these experiences heightened LIU's awareness of the obligation to properly state the country of origin of wire hangers imported by GL PAPER. LIU's prior conduct and knowledge form the circumstances under which the jury will assess whether he exercised reasonable care at GL PAPER. *See Ford Motor Co.*, 395 F.Supp.2d at 1212 (defendant's prior knowledge of the existence of assists was relevant to the question of whether, "Ford had exercised reasonable care under the circumstances[.]"); *Regions Bank v. White*, 2009 WL 3148732, at *13 ("proof that a defendant had or should have had knowledge of a dangerous condition is relevant under most theories of negligence.").

As in *Ford Motor Company*, LIU's experience importing steel wire hangers is relevant to the Government's negligence suit. For example, NC Supply's suspension put LIU on notice of his obligation to ascertain the correct country of origin. *Clem v. Schultz*, 2021 WL 1238284, at *4 (D. Colo. 2021) (defendant's "special training, experience and special knowledge, is relevant to Plaintiff's negligence claim against him."); *Herrell v. Pimsler*, 307 F. Supp. 1166, 1171 (D.D.C. 1969) ("the jury should consider whether minor plaintiff exercised reasonable care in light of his age, education, training, and experience.").

LIU's importation of wire hangers through other companies under similar circumstances are facts the jury will consider at trial. Appendix B to 19 CFR part 171 lists desiderata to be considered when assessing liability and the quantum of the penalty, including:

<u>Subpart (6)</u> defines "Reasonable Care" in negligence actions. It denotes importers' responsibilities involving the entry of merchandise." Among these responsibilities are, "furnishing information sufficient to permit Customs to determine the final classification and valuation of merchandise [and] taking measures that will lead to and assure the preparation of accurate documentation[.]" *Id.* LIU's experience at other importers demonstrates his familiarity with each of these factors and is probative of whether his failure to designate the true country of origin of wire hangers imported by GL PAPER was "reasonable care."

<u>Subpart (7)</u> defines "Clerical Error" as "an error in the preparation, assembly or submission of import documentation or information provided to Customs that results from a mistake in arithmetic or transcription that is not part of a pattern of negligence." LIU's operation of other importers of record that submitted false statements regarding the country of origin of wire hangers evinces, at a minimum, a "pattern of negligence" that negates this defense.

<u>Subpart (8)</u> defines a "Mistake of Fact" as "a false statement or omission that is based on a bona fide erroneous belief as to the facts, so long as the belief itself did not result from negligence in ascertaining the accuracy of the facts." LIU's operation of other importers of steel wire hangers that also misstated the country of origin undermines the notion that LIU held a "bona fide erroneous belief[]" that GL PAPER accurately stated the country of origin.

<u>Subpart (G)</u> lists factors that may mitigate the quantum of a penalty. These factors may include, "(4) Inexperience in Importing" and a "(5) Prior Good Record." LIU's ample experience operating companies that imported steel wire hangers, and the fact that any company he operated was suspended, or accused of similar false statements, is relevant because it demonstrates that mitigation based upon these factors is inappropriate.

Otherwise, paragraphs 21 and 22 of the complaint reference LIU's use of CEK and ABMA to import wire hangers *after* he stopped importing wire hangers through GL PAPER. These paragraphs evince LIU's intent and plan to (1) continue to import wire hangers from PRC, regardless of customs issues, and (2) conceal his involvement with companies engaged in the importation of steel wire hangers from PRC. Indeed, LIU's answer to the complaint announced his central defense will be to deny his role at GL PAPER. *See* Answer at 1, August, 19, 2022, ECF No. 7 (averring that LIU "is not related, in any fashion, to the other defendant GL Paper Distribution, LLC").

LIU's attempt to conceal his involvement at GL PAPER is demonstrated by his conduct at ABMA and CEK. LIU began importing steel wire hangers through ABMA in the same month (February 2017) that he suspended importations through GL PAPER. He began importing at CEK in the same month (April 2019) that ABMA suspended imports. These facts are consistent with LIU's pattern of conduct preceding his importation of hangers through GL PAPER, are evidence of LIU's pattern of avoiding payment of duties, and will be facts for the jury to consider to determine whether he acted negligently. *See*, *e.g.*, *Farris*, 2018 WL 2088284, at *7 (denying Rule 12(f) motion where allegations "show[ed] Defendant's pattern of conduct."); *see* Complaint, *United States v. Chu-Chuang "Kevin" Ho et al.*, No. 19-102 (Ct. Int'l Trade June 21, 2019), ECF No. 2 (identifying seven different companies through which the plaintiff attempted to import merchandise, but naming only four of these companies as defendants). LIU's efforts to conceal his role at wire hanger importers, before and after his conduct at GL PAPER, are directly relevant to his *modus operandi* and his central defense in this case.

## CONCLUSION

In sum, LIU cannot credibly contend that his knowledge and experience supply "no value in developing the issues in a case[,]" *City of Fairhope*, 515 F. Supp. at 1032, or are not "relevant to the issues involved in the action and which could not be put in issue or be given in evidence between the parties." *Sanders*, 2017 WL 3026069, at *2. Nor are these allegations scandalous: LIU's operation of other wire hanger importers and these importers' issues with U.S. customs do not "unnecessarily reflect[] on the moral character of [LIU] or state anything in repulsive language that detracts from the dignity of the court." *Lauer*, 2007 WL 1393917, at *2.

For these reasons, the Government respectfully submits that the Court reject LIU's pursuit of this "drastic remedy[,]" *Beker Industries Corp.*, 585 F. Supp. at 665 (quotations omitted), and deny LIU's motion to strike.

|  | Respectfully submitted, |
|---|---|
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
|  | FRANKLIN E. WHITE, JR.<br>Assistant Director |
| OF COUNSEL:<br>STEVEN J. HOLTKAMP<br>Staff Attorney<br>U.S. Customs and Border Protection<br>Office of the Assistant Chief Counsel<br>610 South Canal Street, Suite 767<br>Chicago, Illinois 60607<br><br>September 8, 2022 | */s/ William Kanellis*<br>WILLIAM KANELLIS<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>1100 L Street, NW, Suite 10000<br>Washington, D.C.  20009<br>202 532 5749<br><br>Attorneys for Plaintiff |