## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| THE UNITED STATES,<br><br>        Plaintiff,<br><br>        v.<br><br>ZHE "JOHN" LIU, and<br>GL PAPER DISTRIBUTION, LLC,<br><br>        Defendants. | Court No. 22-215 |

## **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:
STEVEN HOLTKAMP
U.S. Customs and Border Protection
Office of the Associate Chief Counsel
610 S. Canal St., Ste. 767
Chicago, IL 60607

WILLIAM KANELLIS
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 532-5749

January 17, 2023

Attorneys for Plaintiff

## <u>TABLE OF CONTENTS</u>

STATEMENT OF FACTS..................................................................................................2

     I.      The Complaint Details Mr. Liu's Sophisticated Scheme To Evade Antidumping
           Duties Imposed On Chinese Steel Wire Hangers………………………………2

     II.    Background Relating To The Customs Entry Process.............................................5

ARGUMENT...................................................................................................................7

     I.      Applicable Legal Standards....................................................................................7

          A.     Jurisdiction....................................................................................................7

          B.     Legal Standard For A Motion To Dismiss For Failure To State A
              Claim...........................................................................................................7

          C.     19 U.S.C. § 1621........................................................................................9

          D.     Application Of Law To Liu's Motion to Dismiss.....................................11

              1.     Mr. Liu's Argument Regarding The Statute Of Limitations Has
                   No Merit...........................................................................................11

              2.     The Complaint Complies With Rule 8 And States A Claim
                     Against Mr. Liu...............................................................................14

CONCLUSION...............................................................................................................17

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                         <u>**PAGE(S)**</u>

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................passim

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)..................................................................................passim

*Cedars-Sinai Med. Ctr. v. Watkins,*
   11 F. 3d 1573 (Fed. Cir. 1993)..............................................................7, 8

*Conley v. Gibson,*
   355 U.S. 41 (1957)....................................................................................8, 15

*E.I. Du Pont De Nemours & Co. v. Davis,*
   264 U.S. 456 (1924)..................................................................................9

*Gould, Inc. v. United States,*
   935 F.2d 1271 (Fed. Cir. 1991)..............................................................7, 8

*Hughes v. Rowe,*
   449 U.S. 5 (1980)......................................................................................8

*Kellogg Brown & Root Services, Inc. v. United States,*
   728 F.3d 1348 (Fed. Cir. 2013)..............................................................16

*KVOS, Inc. v. Asso. Press,*
   299 U.S. 269 (1936)..................................................................................7

*Lifetime Industries, Inc. v. Trim-Lok, Inc.,*
   869 F.3d 1372 (Fed. Cir.  2017)..............................................................15

*Robinson v. Shell Oil Co.,*
   519 U.S. 337 (1997)..................................................................................9

*Ross v. Blake,*
   136 S. Ct. 1850 (2016)..............................................................................9

*United States v. American Home Assur. Co.,*
   789 F.3d 1313 (Fed. Cir. 2015)..............................................................10

*United States v. Islip*,
  18 F. Supp.2d 1047 (Ct. Int'l Trade 1987)............................................................14

*United States v. Maverick Marketing, LLC*,
  295 F. Supp. 3d 1349 (Ct. Int'l Trade 2018)................................................7, 9, 12

*United States v. Optrex America, Inc.*,
  2005 WL 3447611 (Ct. Int'l Trade 2005)..............................................10, 13, 14

*United States v. Rockwell International Corp.*,
  10 CIT 38 (Ct. Int'l Trade 1986).............................................................passim

*United States v. Thorson Chemical Corp.*,
  795 F.Supp. 1190 (Ct. Int'l Trade 1992)........................................................6, 14

## **STATUTES**

19 U.S.C. § 1592 ............................................................................................7

19 U.S.C. § 1592(a) ....................................................................................9, 15

19 U.S.C. § 1592(a)(1) .....................................................................................5

19 U.S.C. § 1592(a)(1)(A) ......................................................................5, 14, 16

19 U.S.C. § 1592(a)(1)(A)(i) ..........................................................................6, 9

19 U.S.C. § 1592(a)(1)(A)(ii) ............................................................................9

19 U.S.C. § 1592(a)(1)(B) ...............................................................................16

19 U.S.C. § 1621 ..........................................................................................10

19 U.S.C. § 1621(1) ...................................................................................5, 10

28 U.S.C. § 1582(1) ........................................................................................7

## **RULES**

USCIT R. 8(a) ................................................................................................8

USCIT R. 9(b) ..............................................................................................16

USCIT R. 12(b)(6) ...........................................................................................7

USCIT R. 36(a)(3) ..........................................................................................12

**<u>REGULATIONS</u>**

19 C.F.R. § 141.5.................................................................................................6

19 C.F.R. § 141.68...............................................................................................6

19 C.F.R. § 141.68(e)...........................................................................................6

19 C.F.R. § 142.12(b)...........................................................................................6

19 C.F.R. § 142.3(b).............................................................................................6

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | | |
|---|---|---|
| THE UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-215 |
| | ) | |
| | ) | |
| ZHE "JOHN" LIU, and | ) | |
| GL PAPER DISTRIBUTION, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE
MOTION TO DISMISS FILED BY DEFENDANT ZHE "JOHN' LIU**

Pursuant to Rules 7(d), 8 and 12 of the Rules of the United States Court of International Trade (USCIT R.), the United States respectfully submits this response in opposition to the motion to dismiss (Mot., ECF No. 16) filed by defendant Zhe "John" Liu on December 13, 2022.

In his motion to dismiss, Mr. Liu requests that the Court dismiss him from this case for two reasons:  First, he argues that the statute of limitations has lapsed because the violations at issue occurred when co-defendant GL Paper Distribution, LLC (GL Paper) sent entry paperwork to the Government, rather than the date of entry of the merchandise.  Mot. at 5-9.  Second, Mr. Liu argues that the allegations contained in our complaint are "legally insufficient" to state a claim against him in his individual capacity.  Mot. at 9-14.  Neither argument has merit.

First, this Court has consistently recognized that the date of entry of merchandise is the date on which the statute of limitations begins to run.  *E.g.*, *United States v. Rockwell*

*International Corp.*, 10 CIT 38 (Ct. Int'l Trade 1986).  In this case, no violation *could have* occurred until GL Paper's false statements were received and relied upon by the Government.

Second, the complaint states a claim against Mr. Liu.  It describes how Mr. Liu orchestrated a multi-year fraud scheme through GL Paper.  It details how Mr. Liu, since 2004, had imported steel wire hangers from the People's Republic of China (PRC) through other companies.  After antidumping duties were imposed on steel wire hangers from PRC, Mr. Liu formed GL Paper and through it, transshipped hangers from PRC through Malaysia to avoid paying these duties.  When the Government inspected GL Papers's purported Malaysian wire hanger manufacturer and exposed that it did not produce hangers, Mr. Liu dissolved GL Paper and opened other companies to continue the scheme.  Simply put, the complaint supplies a narrative of Mr. Liu's culpability that is "plausible on its face[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Nothing more is required.

As explained in greater detail below, Mr. Liu's motion is contradicted by controlling precedent, and should be denied.

## STATEMENT OF FACTS

**I.    The Complaint Details Mr. Liu's Sophisticated Scheme To Evade Antidumping Duties Imposed On Chinese Steel Wire Hangers**

In our complaint, we frame defendants' false statements related to 15 entries of steel wire hangers in the context of a larger scheme:  Over the course of more than a decade, Mr. Liu formed and used multiple companies, including GL Paper, to evade paying antidumping duties

on steel wire hangers imported by these companies.  We describe Mr. Liu's ample history in the industry, his knowledge of antidumping duties, and his efforts to conceal his role in the scheme.

In the complaint, we describe how Mr. Liu's businesses centered upon the importation of steel wire hangers used in the dry cleaning industry.  Compl. ¶ 3, 10.  Specifically, complaint paragraphs 3, 6, and 10 through 14 detail Mr. Liu's history of importing steel wire hangers from PRC through NC Supply, Inc. (NCS) and NC Supply Group, LLC (NCSG).  Mr. Liu first imported steel wire hangers from PRC through NCS from 2005 through 2011.  *Id.*, ¶¶ 6, 14.  He formed NCSG in 2010 and, through it, imported hangers from PRC from March through August, 2012.  *Id.*, ¶ 6.

Mr. Liu's behavior shifted after 2008, when the U.S. Department of Commerce (Commerce) promulgated an antidumping duty order on steel wire hangers manufactured in PRC.  Commerce announced that, due to unfair trade practices that harmed the U.S. manufacturing industry, importers of steel wire hangers from PRC would be required to pay an antidumping duty of 186.98 percent.  *Id.*, ¶¶ 11-13.  Following Commerce's imposition of antidumping duties, Mr. Liu initially stated truthfully that PRC was the country of origin of his hangers and paid the duties owed by NCS and NCSG.  *Id.*, ¶ 14.  However, NCS later stopped paying the duties it owed, and U.S. Customs and Border Protection (CBP) placed the company on a nationwide sanction for unpaid duties.  *Id.*

In the complaint, we set forth facts reflecting Mr. Liu's knowledge of antidumping duties and his efforts to circumvent them.  We describe how Mr. Liu discussed with third parties the costs associated with these duties and the prospect of importing hangers through other countries.  *Id.*, ¶ 16.  We detail how, after the antidumping order had been announced, he set up a succession

of shell companies through which he continued to import steel wire hangers, including:  CEK Group, LLC (CEK) in 2012, *id.*, ¶ 7, Garment Cover Supply, LLC (GCS) in 2013, *id.*, ¶ 8; defendant GL Paper in 2016, *id.*, ¶ 4; and AB MA Distribution Corp. (ABMA) in 2018.  *Id.*, ¶ 9.

The complaint describes how, in the years following 2008, Mr. Liu tried to conceal his role in the scheme by forming companies using names of other individuals.  *Id.*, ¶¶ 17-18.  For example, he caused the incorporation of GL Paper under the name of another person at a Miami, Florida address.  *Id.*, ¶¶ 4, 18.  Mr. Liu caused these newly created companies to import steel wire hangers from PRC, but evaded antidumping duties by claiming the hangers were made in Malaysia (GL Paper and GCS), Thailand (CEK and ABMA), and India (ABMA).  *Id.*, ¶¶ 15-22.

In our complaint, we also detail a pattern of evasion that revealed Mr. Liu's *modus operandi*:  When the Government sought to recover duties owed from a company that Mr. Liu had created, or discovered that a company that Mr. Liu had created had submitted false statements regarding its imports, Mr. Liu shut down that company and continued to import hangers through a new one.  NCS and NCSG stopped importing in 2012 and NCS was sanctioned for unpaid duties in 2014, and in 2014 Mr. Liu began importing hangers purportedly made in Malaysia through GCS.  *Id.*, ¶¶ 8, 14, 17.  In February 2017, the same month GCS stopped importing hangers, Mr. Liu began importing hangers through defendant GL Paper and claimed the hangers were made in Malaysia.  *Id.*, ¶¶ 18, 8.  In July 2017,  in connection with an Enforce and Protect Act investigation concerning GL Paper, the Government inspected the purported Malaysian manufacturer of GL Paper's imported hangers and determined that the Malaysian company did not make them.  Three weeks later, in August 2017, Mr. Liu stopped importing hangers through GL Paper.  *Id.*, ¶¶ 18-20.  Six months later, in February 2018, Mr. Liu

caused the formation of ABMA.  *Id.*, ¶¶ 20-21.  ABMA imported wire hangers from May 2018 through April 2019, claiming they were made in India and Thailand.  *Id.*, ¶¶ 8, 14.  *One week after ABMA's last import of steel wire hangers, in April 2019, Mr. Liu caused CEK to begin to import steel wire hangers and falsely claim that these hangers were produced in Thailand. Id.*, ¶ 22.  These false statements allowed these companies to evade antidumping duties owed on steel wire hangers from PRC.  *Id.*, ¶¶ 15-22.

In sum, the complaint depicts a pattern of behavior that evidences Mr. Liu's familiarity with U.S. customs rules, his knowledge of the steel wire hanger industry and its practices, his intent to evade paying antidumping duties on steel wire hangers from PRC, and his efforts to conceal his role in the scheme.  These facts together show that the entries made by GL Paper at the direction of Mr. Liu were not made with reasonable care.  *See* 19 U.S.C. § 1592(a)(1).

Finally, Exhibit A to the complaint is a table identifying the specific GL Paper entries at issue in the penalty.  For each violation, it identifies the entry number, the date of entry, the duties owed and the loss of revenue caused by Mr. Liu's false statements, among other things.

## II.     Background Relating To The Customs Entry Process

The violations of section 1592 in this case occurred on the dates of entry of hangers imported by GL Paper.  *See* 19 U.S.C. § 1592(a)(1)(A) (no person "may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States").  These violations occurred when these false entries were relied upon by CBP and allowed GL Paper to avoid paying duties owed on these entries.  Compl. ¶¶ 18, 31.  Thus, the date of each entry is the date on which the statute of limitations began to run.  *See* 19 U.S.C. § 1621(1).  Because Mr. Liu

asks the Court to adopt a new legal theory – *i.e.*, that a claim accrues on a date *other than the date of entry* – the Government here describes how goods are entered into the United States.

As a practical matter, importation of merchandise must precede "entry."  A party normally will not file an entry until the merchandise has arrived at the port.  *See* 19 C.F.R. § 141.68(e).  Generally, an importer must file an entry within 15 calendar days after arrival.  19 C.F.R. § 141.5.  Filers (ordinarily licensed customs brokers operating on behalf of an importer of record) use CBP Form 3461 to file the initial entry and obtain release of the goods. Once released, the importer has 10 working days to file the entry summary.  19 C.F.R. § 142.12(b).

19 C.F.R. § 141.68, in relevant part, defines the time of entry of merchandise as either (1) "the time the appropriate CBP officer authorizes the release of the merchandise," (2) "the time the entry documentation is filed, or (3) if entry documents are submitted before arrival, "the time the merchandise arrives within the port limits, . . . and if requested by the importer."  CBP's receipt and consideration of entry documentation predicates its assessment of duties owed based upon statements made in entry documents.  *Id.*; *see also* 19 C.F.R. § 142.3(b).  The date of entry reflects CBP's reliance upon the importer's statements in entry documents and is the linchpin of a section 1592 claim.  It renders such a claim "material" by allowing a defendant to pay fewer duties than lawfully owed.  *See United States v. Thorson Chemical Corp.*, 795 F. Supp. 1190, 1196 (Ct. Int'l Trade 1992) (false statements had the "tendency to influence [CBP's] decision in assessing duties."); 19 U.S.C. § 1592(a)(1)(A)(i) (requiring a "material" false statement).

Accordingly, the entry dates identified in Exhibit A to the complaint were the dates that the violations in this case first accrued.  The complaint alleged that violations of section 1592 were caused by CBP's reliance upon false statements made by Mr. Liu and GL Paper.  *See*

Compl. ¶ 18 ("By falsely declaring that these hangers were manufactured in Malaysia, GL Paper avoided paying the antidumping duty rate on steel wire hangers from PRC.").  CBP's reliance upon defendants' false statements made them "material," and triggered the Government's claim.

Mr. Liu's argument that the "violations" in the complaint occurred *before* the dates of entry – *i.e.*, *before* CBP received defendants' false statements in entry documents – neglects that the violations of section 1592 here centered upon CBP's reliance upon defendants' false statements and their failure to pay the duties owed.  In this case, no material violation of section 1592 could have occurred until CBP received and relied upon defendants' false statements.

## ARGUMENT

### I.    Applicable Legal Standards

#### A.    Jurisdiction

The Government bears the burden of demonstrating that this Court's subject-matter jurisdiction exists as the party invoking the court's jurisdiction.  *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F. 3d 1573, 1583 (Fed. Cir. 1993) (citing *KVOS, Inc. v. Asso. Press*, 299 U.S. 269, 278 (1936)).  This Court possesses exclusive jurisdiction over claims brought under 19 U.S.C. § 1592, pursuant to 28 U.S.C. § 1582(1).

#### B.    Legal Standard For A Motion To Dismiss For Failure To State A Claim

Mr. Liu seeks to be dismissed from this case by arguing the complaint fails to state a plausible claim for which relief could be granted against Mr. Liu.  Mot. at 9 (citing USCIT R. 12(b)(6)).  When considering such a motion, "the court assumes all factual allegations in the complaint to be true and draws all reasonable inferences in favor of the plaintiff."  *United States v. Maverick Marketing, LLC*, 295 F. Supp. 3d 1349, 1351–52 (Ct. Int'l Trade 2018) (citing

*Cedars–Sinai Med. Ctr.*, 11 F.3d at 1584 n.13 & *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  A court may properly dismiss a case under Rule 12(b)(6) only if the plaintiff's allegations of fact are not "enough to raise a right to relief above the speculative level. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted).  In other words, dismissal of the action is not proper unless it is evident that plaintiff can prove no set of facts that would entitle him to relief.  *Hughes v. Rowe*, 449 U.S. 5, 10 (1980).  Although a complaint's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" where a complaint "states a plausible claim for relief," it should survive a motion to dismiss. *Iqbal*, 556 U.S. at 678–679.

Although Mr. Liu does not cite to the rule, or any case law interpreting it, the specificity required of a complaint is governed by Rule 8 of the Rules of this Court.  Rule 8 instructs that a complaint must include: "(1) a short and plain statement of the grounds for the court's jurisdiction, [] (2) a short and plain statement of the claim showing that the pleader is entitled to relief[,] and (3) a demand for the relief sought[.]"  USCIT R. 8(a).  Such a statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Together, Rules 12(b)(6) and 8(a) create a standard of pleading that recognizes the imposition of litigation costs must be justified by factual allegations establishing a plausible entitlement to relief.  Pursuant to Rule 12(b)(6), a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.*  Concomitantly, the Supreme Court has held that Rule 8

8

"does not require 'detailed factual allegations.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Indeed, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556).

To properly state a claim for relief under 19 U.S.C. § 1592(a), the complaint must include "sufficient facts to show that a person entered or introduced, or attempted to enter or introduce, merchandise into United States commerce by means of either (i) a material and false statement, document, or act, or (ii) a material omission." *Maverick Marketing, LLC*, 295 F. Supp. 3d at 1352 (citing 19 U.S.C. § 1592(a)(1)(A)(i-(ii)).

C.     19 U.S.C. § 1621

Section 1621 of title 19 provides, in relevant part, that where a complaint alleges a violation of section 1592, "no suit or action . . . may be instituted unless commenced within 5 years after the date of the alleged violation." Although no Federal appellate court has opined upon the meaning of the "date of the alleged violation" under section 1592, the Supreme Court has observed that any interpretation of such a statute should favor allowing the Government to bring suit: "Statutes of limitation sought to be applied to bar rights of the government, must receive a strict construction in favor of the government." *E.I. Du Pont De Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924).

"Statutory interpretation, as we always say, begins with the text." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "In reviewing the statute's text,

we give the words 'their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import.'" *United States v. American Home Assur. Co.*, 789 F.3d 1313, 1325 (Fed. Cir. 2015) (citations omitted).

In this instance, the "clear language" of section 1621 reflects Congress' intent that it expire "within 5 years after the date of the alleged violation." The "date of the alleged violation" is thus the triggering event, and invites consideration of what conduct may be a violation under section 1592.

In this Court, where a complaint alleges that the defendant submitted materially false statements to CBP to avoid paying duties owed on entered merchandise, the "date of the violation" is the date of entry of the subject merchandise. This Court has stated that, "Congress specifically established a statute of limitations of *five years from the date of entry of subject merchandise* for negligence and gross negligence claims." *United States v. Optrex America, Inc.*, 29 CIT 1494, 1502 (Ct. Int'l Trade 2005) (citing 19 U.S.C. § 1621) (emphasis supplied). Thus, in *Optrex*, because "the importer refused to waive the relevant statute of limitations of five years from the *date of entry for negligence and gross negligence claims* in response to [CBP's] request, [CBP] would not be able to pursue gross negligence after five years for all entries it investigated." *Id.* (emphasis supplied).

Similarly, in *United States v. Rockwell International Corp.*, 628 F. Supp. 206, 209 (Ct. Int'l Trade 1986), this Court was confronted with the question of when the statute of limitations began to accrue. As Mr. Liu does here, the defendant in *Rockwell* argued the action was barred by the statute of limitations because it was commenced more than five years after defendant allegedly submitted a false declaration of assembly costs. *Id.* at 208–09. In its opposition, the

Government argued that the timeliness of the action is governed by the entry date of the merchandise. *Id.* at 209. This Court rejected defendant's argument and agreed with the Government, reasoning that "the timeliness of this action is determined not by the date on which the estimated declaration of assembly costs was filed, but rather by *the dates on which Rockwell entered the merchandise.*" *Id.* at 209 (emphasis supplied). The Court denied defendant's summary judgment motion, holding that, "this action is timely since the entries which are the subject of the complaint occurred less than five years prior to commencement of the action." *Id.*

     D.    <u>Application Of Law To Mr. Liu's Motion To Dismiss</u>

          1.   <u>Mr. Liu's Argument Regarding The Statute Of Limitations Has No Merit</u>

Mr. Liu's claim that the statute of limitations has lapsed is meritless. The complaint, section 1621, and this Court's decisions interpreting section 1621, instruct that the "date of the violation" in this case was the date of entry for each of the 15 entries of steel wire hangers. The complaint was filed within five years of those dates of entry, and is therefore not time-barred.

As a preliminary matter, Mr. Liu's argument turns upon counterfactual assertions. First, he contends that he does not know the date of the alleged violation because "Plaintiff has never stated this date in either the administrative proceedings or the Court filing." Mot. at 7. This is plainly not true. Paragraph 18 of the complaint sets forth the violations Mr. Liu committed through GL Paper, and notes that details of the claims were identified in Exhibit A. Paragraph 31 states that GL Paper made entry of these wire hangers from July 24 through August 8, 2017. Exhibit A to the complaint in this case lists the dates of entry for each of the 15 violations under the column, "Entry Date."

Mr. Liu avers that he does not know facts relating to GL Paper.  With respect to GL Paper's false statements to the Government, Mr. Liu avers that he personally "was not involved in the transaction nor was an owner, officer employee or director of GL Paper."  Mot. at 7.  We believe that Mr. Liu's statement is false.  Nonetheless, Mr. Liu's claim that he does not know when GL Paper submitted false statements undermines his motion to dismiss because the Court "assumes all factual allegations in the complaint to be true and draws all reasonable inferences in favor of the plaintiff."  *Maverick Marketing, LLC*, 295 F. Supp. 3d at 1351–52.  The complaint lists 15 entry dates for the violations, and Mr. Liu's professed ignorance does not alter this assertion or shift the burden.

In a similar vein, Mr. Liu errs by claiming that the Government "admitted the entry paperwork was submitted to CBP on or before July 20, 2017."  Mot. at 8.  We made no such admission.[1]  Indeed, it could not, since Mr. Liu centered discovery upon when GL Paper submitted "entry paperwork" to the Government.  The term "entry paperwork" is fatally ambiguous, as it may entail documents or records submitted far in advance of entry, after entry has already been made, or after a request for additional documents.[2]  More to the point, the

---

1  We responded to Mr. Liu's request for admissions in a manner consistent the time frame "ordered by the Court."  USCIT R. 36(a)(3); *see* ECF No. 14 (ordering discovery to be completed by March 17, 2023).  The Government will update its responses if and when it obtains additional evidence through discovery.

2  Currently, ACE is the system through which electronic trade transactions are recorded by CBP.  Filers typically do not submit "paperwork" to CBP.  Additionally, documents that may ultimately be submitted to CBP with Forms 3461 and 7501 may be transmitted to CBP prior to the date of entry.  Further, records affecting entry and duties owed may be submitted to CBP *after* entry is made in response to a CBP Request for Information (CBP Form 28).  In sum, Mr. Liu's claim that "[t]he date of the submission of the paperwork is no later than the date of entry[,]" Mot. at 3, is at best nonsensical, and at worst, wrong.  Even if Mr. Liu explained what he meant by "paperwork," the time frame for submitting this "paperwork" or documents or information to CBP related to the entry of merchandise may extend beyond the date of entry.

Government would not know when GL Paper or Mr. Liu submitted "entry paperwork" to the Government – Mr. Liu possesses this information.

Mr. Liu's principal contention is that any "violation" of the statute "necessarily occurred before the entry paperwork was prepared and submitted by GL Paper to Customs." Mot. at 8. In other words, he argues that the "violation" of section 1592 must have occurred when GL Paper's false statements were first submitted to CBP, Mot. at 8-9, and that therefore the complaint was time-barred. Ironically, Mr. Liu claims that he does *not know* when these false statements were submitted, which leaves open the possibility that false statements were submitted before, on, or after the date of entry. This ambiguity alone dooms his argument.

Ultimately, however, Mr. Liu's mischaracterization of and ambiguity regarding facts are irrelevant to the question before the Court, because "Congress specifically established a statute of limitations of five years from the *date of entry of subject merchandise for negligence . . . claims.*" *Optrex*, 2005 WL 3447611, at *6 (emphasis supplied). Likewise, this Court in *Rockwell* held that the dates the defendant "entered the merchandise" was the date of violation, not the date the defendant submitted false statements. 628 F. Supp. at 209. As the complaint was filed within five years of the entry date of all 15 entries at issue, Mr. Liu's argument fails.

But more fundamentally, Mr. Liu's argument misunderstands the violations alleged in the complaint: These violations centered upon CBP's receipt and consideration of false statements which resulted in GL Paper's payment of less duties than it lawfully owed. Compl. ¶ 18. The violations were not "material" until they "influence[ed CBP's] decision in assessing duties."[3]

---

3 Theoretically, it may be possible for a 1592 action to turn upon an "attempt" to submit a false statement that was not received by the Government. *See* 19 U.S.C. § 1592(a)(1)(A) ("attempt to introduce"). But this is not the violation alleged in this case.

*Thorson Chemical Corp.*, 795 F. Supp. at 1196.  Thus, the date or dates that Mr. Liu or GL Paper "submitted" the false information to CBP is irrelevant to the violations alleged in this complaint.

Mr. Liu's novel interpretation of section 1621 is strikingly bereft of legal support.  He makes no reference to *Optrex* or *Rockwell*.  Nor does his invocation of *United States v. Islip*, 18 F. Supp.2d 1047 (Ct. Int'l Trade 1987), aid him.  Mr. Liu cites *Islip* for the unremarkable proposition that a section 1592 complaint alleging negligence or gross negligence must be filed within five years of the date of the violation.  Mot. at 6-7.  Here, *Islip* merely recited the text of 1621.  The opinion did not, in any respect, suggest that the date of merchandise entry was not the event triggering the running of the statute of limitations.  In sum, Mr. Liu's argument has no legal merit.

    2.  <u>The Complaint Complies With Rule 8 And States A Claim Against Mr. Liu</u>

The complaint in this case complies with Rule 8 as it "state[s] a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 663.  It describes Mr. Liu's personal role and knowledge in the scheme, outlining his ample experience in the wire hanger industry, as an importer of steel wire hangers, with CBP rules, and with antidumping duties.  It describes Mr. Liu's personal motive to avoid paying duties and how he carried out the scheme.  It details how, beginning in June 2016, Mr. Liu formed or caused the formation of GL Paper under another person's name, how he controlled and directed its operations, how he caused GL Paper to introduce steel wire hangers into the commerce of the United States, and how he caused GL Paper to submit false claims that these hangers were manufactured in Malaysia.  It details how Mr. Liu created a succession of shell companies as the Government either uncovered evidence of his companies' false statements or demanded payment from them.  It describes how Mr. Liu

created these companies in the names of other individuals and at other addresses to conceal his involvement in the scheme.  And Exhibit A to the complaint specifies the date of entry, the port of entry, and the duties owed, among other facts relating to each of the 15 entries at issue.

These facts together "allow[] the court to draw the reasonable inference that [Mr. Liu] is liable for the misconduct alleged."  *Lifetime Industries, Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376 (Fed. Cir.  2017) (citing *Iqbal*, 556 U.S. at 678).  The complaint gave Mr. Liu "fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Accordingly, because the complaint "states a plausible claim for relief," it should survive this motion to dismiss.  *Iqbal*, 556 U.S. at 678–79.

For his argument, Mr. Liu pendulates between arguing that the complaint "makes no specific factual allegation about [Mr. Liu]," Mot. at 3, to arguing that allegations about him appeared in only two paragraphs, *id.*, to semantic gamesmanship (arguing that he cannot be both a principal and an agent of GL Paper).  *Id.* at 3-4; *see also id.* at 8 (claiming the complaint "does not allege that Defendant Mr. Liu made the declaration. The complaint alleges that Defendant Mr. Liu caused GL Paper to introduce or attempt to introduce the hangers.").  Mr. Liu's wordplay and generalizations bely the hard fact that the complaint supplies a profusion of specific allegations about Mr. Liu's personal involvement in and direction of the scheme.  *See* Compl. ¶¶ 3, 10, 14, 15, 16, 17, 18, 21, 22.

There is no legal precedent for Mr. Liu's lexical conjury that he cannot not be liable if he merely "caused" GL Paper to submit false statements, and he offers none.  *Id.*  To the contrary, section 1592 proscribes introducing or attempting to introduce merchandise into the United States by material false statements or omissions, 19 U.S.C. § 1592(a)(1)(A), and the "aid[ing] or

15

abet[ting]" of persons who make these false statements and omissions.  *Id.* at § 1592(a)(1)(B).

Thus, Mr. Liu may be liable either because he personally caused the submission of false

statements, or aided GL PAPER's submission of false statements.

Indeed, as a corporation, it is apodictic that GL Paper could *only act* through or at the

behest of its agents.  *See Kellogg Brown & Root Services, Inc. v. United States*, 728 F.3d 1348,

1369 (Fed. Cir. 2013).  The suggestion that because GL Paper was formally the importer of

record, Mr. Liu should be shielded for his conduct at GL Paper, defies common sense and cases

from this Court.  Indeed, this reading of section 1592 is perverse, as the complaint makes

apparent that Mr. Liu's central stratagem was to use GL Paper, CEK, GCS, and ABMA as alter

egos through which he could continue to carry out the scheme without detection.  Such a reading

would reward Mr. Liu's deception.

Mr. Liu's argument relating to *United States v. Greenlight Organic, Inc.*, Ct. Int'l Trade

No. 17-31 (*Greenlight*), is equally infirm.  *See* Mot. at 9-12.  *First*, Greenlight is inapposite

because the complaint in *Greenlight* alleged fraud, not negligence.  Fraud carries a heightened

pleading standard.  *See* USCIT R. 9(b); *see Greenlight*, ECF No. 131 at 7-8.  As the complaint

here does not allege Mr. Liu acted at a culpability level of fraud, his reliance upon *Greenlight* is

misplaced.

*Second*, Mr. Liu overlooks the fact that in *Greenlight*, the Court later *denied* defendant's

motion to dismiss a second amended complaint which contained allegations that resemble those

in the extant complaint.  *See Greenlight*, ECF No. 131.  The Court centered its analysis on Rule

9(b), and among other things, alluded to the complaint's allegations that the individual defendant,

Aulakh, (1) possessed knowledge of the industry and Greenlight's false statements, (2) "directed

16

Greenlight to create double invoices for each entry," and (3) "directed Greenlight to make payments into two separate bank accounts to conceal the double invoicing scheme." *Id.* at 8-9. Here, the complaint sets forth Mr. Liu's familiarity with the industry, his knowledge of antidumping rules, his efforts to cause the formation of shell companies to conceal the scheme, his direction and control of GL Paper, and his direction of GL Paper's submission of false statements to the Government.  Given that *Greenlight* viewed the complaint through the prism of the heightened pleading standard of Rule 9(b), *a fortiori*, similar allegations in the complaint in this case should satisfy the lower pleading standard identified in Rule 8.

But the Court need not go that far.  The complaint offers an account of Mr. Liu's culpability that is "plausible on its face."  *Iqbal*, 556 U.S. at 663.  It "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556.  For these reasons, Mr. Liu's motion to dismiss should be denied.

**<u>CONCLUSION</u>**

As discussed above, Mr. Liu's motion to dismiss is legally and factually infirm.  As there is no legal or factual basis upon which to dismiss the Government's complaint, the United States respectfully requests that the Court deny Mr. Liu's motion.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

*/s/ Franklin E. White, Jr.*
FRANKLIN E. WHITE, JR.
Assistant Director

/s/ William Kanellis
WILLIAM KANELLIS
U.S. Department of Justice
Civil Division
OF COUNSEL:                              Commercial Litigation Branch
STEVEN HOLTKAMP                          1100 L Street, NW, Suite 10000
Senior Attorney                          Washington, D.C.  20009
U.S. Customs and Border Protection       (202) 532-5749
Office of the Associate Chief Counsel
610 S. Canal St., Ste. 767
Chicago, IL 60607                        Attorneys for Plaintiff


Dated:  January 17, 2023