IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | | |
|---|---|---|
| THE UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-215 |
| | ) | |
| | ) | |
| ZHE "JOHN" LIU, and | ) | |
| GL PAPER DISTRIBUTION, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### THE UNITED STATES' OPPOSITION TO DEFENDANT'S
### SECOND MOTION TO AMEND THE PROTECTIVE ORDER

Pursuant to the Rule 26 of the Rules of the United States Court of International Trade and the protective order entered in this case (Protective Order, ECF No. 32), plaintiff, the United States, respectfully submits this opposition to the "Motion to amend Judicial Protective Order" (Mot., ECF No. 53) filed by defendant Zhe "John" Liu.

There is no reason to amend the Protective Order; Mr. Liu may review the discovery materials under its current terms.  The Protective Order delimits the circumstances under which *other persons* may view confidential materials – not Mr. Liu.  Mr. Liu wants to *amend* the Protective Order, rather than access materials under its terms, so that he may give his criminal counsel access to civil discovery.  The Court has already denied him once.  To accede to this second attempt could undermine the Government's criminal investigation.  Mr. Liu's motion should be denied.

## FACTUAL BACKGROUND

The complaint in this case was filed against Mr. Liu and GL Paper Distribution, LLC (GL Paper) on July 21, 2022.  It set forth a scheme wherein Mr. Liu operated a series of companies including defendant GL Paper, NC Supply, Inc., NC Supply Group, CEK Group, LLC, Garment Cover Supply, LLC, and AB MA Distribution Corp. (together, "Liu Companies").  Mr. Liu caused the Liu Companies to import steel wire hangers into the United States using false statements about their country of origin, so that he could avoid paying antidumping duties owed on this merchandise.  Complaint at ¶¶ 3, 14-22, ECF No. 2.  The complaint details how, as the Government became aware of wrongdoing at each company, Mr. Liu caused a new shell company to be formed and continued the scheme through that company. This matter centers upon entries Mr. Liu made through GL Paper.  *Id.*  ¶¶ 18-20, 29-32.

We produced discovery to Mr. Liu including materials underlying Enforce and Protect Act (EAPA) allegations against his companies.  We previously explained that Mr. Liu could view discovery provided to him because he owned, operated and/or controlled all of the Liu Companies.  We disclosed these records to him because, as the person running the Liu Companies, Mr. Liu had already seen them.  In March 2023, Mr. Liu filed a motion for a Protective Order to "provid[e] counsel for Liu the ability to fully and completely review the discovery responses provided by [the Government.]"  Motion for Protective Order, ECF No. 25 at 2.  Mr. Liu attached to that motion a proposed Protective Order.  *Id.*  We agreed to the terms of the proposed Protective Order and the Court entered it.  Protective Order, ECF No. 32.  This obviated any concern about Mr. Liu's or his counsel's ability to review the discovery provided to him.

The Protective Order explicitly identifies the parties governed by its terms – the "producing party" who produces confidential information, and the "receiving party" who receives confidential information.  ECF No. 25, Attachment 1 at 1.  It sets forth what Mr. Liu, as the "receiving party," may disclose to others and the circumstances of such disclosure.  Paragraph 1 defines "Confidential Information."  *Id.*  Paragraph 3 identifies the persons to whom this confidential information may be disclosed, including "[p]ersons who prepared, received, or reviewed Confidential Information prior to its production in this case."  Paragraphs 5, 7, 9 and 10 set forth the maintenance and conditions of disclosure of such information.  In sum, the Protective Order supplies Mr. Liu – *i.e.*, the "receiving party" – the full ability to review discovery provided to him by the Government.

 On June 29, 2023, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, a search warrant was executed at Mr. Liu's residence.  His home served as the business office of the Liu Companies and was the site from which Mr. Liu directed the transshipment scheme.

On July 8, 2023, Mr. Liu filed a consent motion to stay this case.  Consent Motion to Stay, ECF No. 42.  Mr. Liu justified the stay by asserting that, "[t]he suspension of a civil proceeding during an ongoing criminal investigation of the same entries, entities and periods of time reduces unnecessary burdens and expenses on all parties and better serves the needs of justice."  *Id.* at 4.  Mr. Liu has elsewhere claimed he is a "small respondent" with "limited resources."  ECF No. 49 at Ex. 3.

In September 2023, almost two months after the court entered the stay of proceedings in this case, Mr. Liu filed a motion (ECF No. 48) requesting that the Protective Order be amended to permit Mr. Robert Becerra – Mr. Liu's criminal counsel – access to the documents as a

"consultant."  On September, 28, 2003, we filed an opposition against this apparent end run around well-established restrictions on criminal discovery, and the Court denied Mr. Liu's motion the next day.  Paperless Order, ECF No. 50.   The Court published its Order at 12:11 p.m.

Within two minutes of the order's publication, at 12:13 p.m. (11:13 CDT), Mr. Liu's counsel sent an e-mail to the Government seeking to remove documents from the Protective Order.  *See* ECF No. 53 at 11.  The e-mail did not mention the Court's order or Mr. Liu's prior claim that a stay was needed.  Rather, Mr. Liu's counsel declared, *ipse dixit*, that he would "assume" that the Government agreed to his designation of documents if it did not comply with a deadline he set.  *Id.*

Although his current motion is difficult to understand, Mr. Liu appears to seek a modification of the Protective Order that will permit him to review documents produced by the United States.  *See* Mot. at 7 ("[D]ue to the JPO, counsel for Liu cannot disclose these documents and discuss them with Liu[.]").

## ARGUMENT

### THE PROTECTIVE ORDER DOES NOT NEED TO BE AMENDED

To justify amending the Protective Order, Mr. Liu conjures a dilemma where none exists.  As evidenced by its plain text, the Protective Order supplies Mr. Liu the full ability to review the materials provided to him in discovery:  Mr. Liu is the "receiving party," and the Protective Order expressly and implicitly acknowledges his ability to receive and review Confidential Information.  Mr. Liu's argument neglects that the primary purpose of the Protective Order is to outline the conditions of *disclosure* of such confidential information – not its review by the

receiving party.  *See* Protective Order at ¶ 1 ("the disclosure of which to or by the receiving party[.]"); *id.* at ¶ 3 ("No receiving party may disclose any document designated as containing Confidential Information or disclose or summarize any information contained in such a document . . ."); *id.* at ¶ 12 (discussing destruction of Confidential Information by the "receiving party" at the close of litigation).

Contrary to Mr. Liu's argument, Mot. at 6, in no way does the Protective Order "prevent the defendant from examining public information provided to [him.]"  Equally as fatuous is his claim that, "due to the [Protective Order], counsel for Liu cannot disclose these documents and discuss them with Liu[.]"  Mot. at 7.  Mr. Liu's counsel cites to nothing in the Protective Order that suggests such a notion because the Protective Order says no such thing.  Thus, because Mr. Liu's counsel is not, in any respect, prevented from discussing with his client the discovery produced by the Government – whether confidential or not – Mr. Liu's claim that, the "absence of this [Confidential] identification has harmed defendant[,]" Mot. at 7, is without any basis in fact, whatsoever.  This is a false controversy.

Indeed, soon after the Court issued the Protective Order, on July 27, 2023, the United States Court of Appeals for the Federal Circuit removed any doubt that Mr. Liu may review confidential materials relating to allegations against his companies.  In *Royal Brush*, the Government redacted confidential information emerging from an EAPA allegation against Royal Brush and provided the defendant with "summaries" of the confidential information.  75 F.4th at 1254.  Royal Brush argued to the Federal Circuit that it was entitled to see the confidential information, and the Court agreed.  "[W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to

prove the [g]overnment's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Id.* at 1257 (quoting *Greene v. McElroy*, 360 U.S. 474, 496 (1959)). The court of appeals rooted a party's ability to review this confidential information in the Fifth Amendment:  "[T]he law is clear that, in adjudicative administrative proceedings, due process 'includes the right to know what evidence is being used against one.'"  *Royal Brush*, 75 F.4th at 1258 (quoting *Robbins v. U.S. R.R. Ret. Bd.*, 594 F.2d 448, 452 (5th Cir. 1979)).

Importantly, the Federal Circuit in *Royal Brush* addressed the Government's concerns about disclosing confidential business information by concluding that, "[t]here is no legitimate government interest here in refusing to provide confidential business information to Royal Brush when all government concerns about the necessity of secrecy can be alleviated by issuing a protective order[.]"  *Royal Brush*, 75 F.4th at 1259.  In this case, the Government considered such EAPA allegations against Mr. Liu and the Liu Companies, and disclosed these materials to Mr. Liu in discovery.  *Royal Brush* makes clear that Mr. Liu may review these materials, and that this information is adequately protected by the Protective Order.

That nothing prevents Mr. Liu from reviewing the discovery materials begs the question of why he found it necessary to file this motion.  As the person who operated the Liu Companies, he had already seen the majority of this information.  And paragraph 14 of the Protective Order supplies him a route to resolve any dispute about what is or is not designated confidential.  ECF No. 25, Ex. 1.  Indeed, that Mr. Liu asks the Court to *amend* the Protective Order wholesale, Mot. at 9, rather than immediately resolve any dispute through paragraph 14, betrays his true ambition:  he again seeks to provide his criminal counsel access to civil discovery.

6

As mentioned above, Mr. Liu already unsuccessfully sought to provide criminal counsel access to materials in the Protective Order.  And, as we explained in our response in opposition (ECF No. 49), there was no legitimate reason to add Mr. Liu's criminal counsel to a protective order in litigation that had been stayed for many months.  Especially since courts have uniformly recognized the impropriety of allowing criminal counsel access to civil discovery.  Pl. Resp. to Mot. to Add Attorney to Protective Order at 5, ECF No. 49.  A target in a criminal investigation may not "impermissibly us[e] civil discovery to their benefit in the criminal case." *S.E.C. v. Nicholas*, 569 F. Supp.2d 1065, 1067 (C.D. Cal. 2008); *Larouche Campaign v. F.B.I.*, 106 F.R.D. 500, 502 (D.C. Mass. 1985) (files had "a direct bearing on the ongoing criminal investigation, and therefore are not discoverable . . . in the parallel civil action.").  This is because "[a]llowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992).  In this matter, "[t]he risk that civil discovery will be used to circumvent criminal discovery limitations becomes much greater where the same facts are at issue[.]" *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 74 (W.D.N.Y. 2003).

Because the Protective Order already gave Mr. Liu access to these materials, Government counsel adduced that counsel's September 29, 2023 e-mail – which was sent immediately after the Court's order was entered – was a bad-faith attempt to circumvent the Court's Order that same day denying his criminal counsel access to civil discovery.  On October 5, 2023, the Government counsel responded that he would wait until the stay in this case was lifted to discuss what fell within or outside of the Protective Order.  *Id.*  This approach will preserve the integrity of the Government's criminal investigation of Mr. Liu, as well as Mr. Liu's ability to later argue

7

that some materials should be accessible to third parties outside the Protective Order.  It will also conserve Mr. Liu's alleged "limited resources."  This balancing of equities is essential until the criminal investigation has been resolved.  Indeed, Mr. Liu expressly recognized these equities in the Status Report (ECF No. 51) that he filed on December 1, 2023, wherein he again asked the Court to continue the stay in these proceedings because of the ongoing criminal investigation.  Mr. Liu should not be permitted in one filing to aver that he needs the protection of a stay, but in another demand that the Court release materials from the Protective Order entirely.  His purported reasoning is self-contradicting and apparently pretextual.

It bears mention that Mr. Liu's professed agita is a product of his own gamesmanship.  His prior statements about the Liu Companies have cornered him into a Hobson's choice:  He sought to distance himself from the scheme detailed in the Complaint by falsely attesting that he did not operate or control the Liu Companies.  *E.g.*, ECF No. 7 (Answer) at 1 (he "is not related, in any fashion, to . . . GL Paper Distribution, LLC"), ¶¶ 3,4,18, 20; Amended Answer, ECF No. 15, ¶ 3 (denying he "operated, directed, was an agent of, and handled the importation of merchandise" for AB MA Distribution Corporation); ¶¶ 4; 17, 19, 21; ECF No. 16 at 7; ECF No. 27 at 8, 10; *see also United States v. Zhe "John" Liu and AB MA Distribution Corporation*, Ct. of Int'l Trade No. 23-116, ECF No. 9 at ¶ 3 (answer denying that "he operated, directed, was an agent of, and handled the importation of merchandise by defendant Ab Ma Corp").  Yet, Mr. Liu's disavowals convert information already received by the Liu Companies into that of third parties, and subject to the Protective Order.

This double bind exposes why Mr. Liu wants to amend the Protective Order, rather than operate within its terms:  he has *already seen* the information related to these companies; he wants to remove them from the Protective Order because his criminal counsel has *not* seen them.

## CONCLUSION

As explained above, the Protective Order does not need to be amended.  As it is now written, it supplies Mr. Liu with the ability to review all of the evidence the Government provided to him in discovery, including confidential information.  Accordingly, the Government respectfully requests that the Court deny Mr. Liu's motion, or defer a decision on that motion until the conclusion of the criminal investigation of Mr. Liu.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:                                          */s/ William Kanellis*
                                                     WILLIAM KANELLIS
STEVEN HOLTKAMP                                      ANNE DELMARE
Senior Counsel                                       U.S. Department of Justice
U.S. Customs and Border Protection                   Civil Division
Office of the Associate Chief Counsel                Commercial Litigation Branch
610 S. Canal St., Ste. 767                           1100 L Street, NW, Suite 10000
Chicago, IL 60607                                    Washington, D.C.  20009
                                                     Tel: (202) 532-5749
                                                     Email: william.g.kanellis@usdoj.gov

                                                     Attorneys for Plaintiff

January 4, 2024

9