UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| United States<br><br>        *Plaintiff,*<br><br>v.<br><br>Zhe "John" Liu and<br>CEK Group, LLC<br><br>        *Defendants.* | Ct. No. 24-00132 |

Amended Answer

Pursuant to Rule 7(a)(2) of the Rules of the U.S. Court of International Trade, Defendant Zhe "John" Liu and CEK Group, LLC, and in partial response to the Motion of the United States of October 24, 2025, hereby provides its updated and amended answer to the complaint in this matter.

1. Liu admits that this is an action to enforce monetary civil penalties. Liu denies that these hangers were transshipped through Thailand and instead asserts they are a product of Thailand. As these were products of Thailand, no ADD duties were lawfully owed on these importations.

2. Liu admits that the U.S. Court of International Trade has exclusive jurisdiction.

3. Liu admits that he was a Florida resident who resided at 1448 Holts Grove Circle, Winter Park, Florida at the time of the purported conduct. Liu

1

admits that he owned and controlled CEK Group LLC and NC Supply, Inc. Liu denies that he owned, operated, controlled or was an agent of multiple companies through which he directed and abetted the importation of steel wire hangers by GL Paper, NC Supply Group, LLC, Garment Cover Supply LLC and Ab Ma Distribution Corporation.

4. Liu admits that NC Supply Inc ("NCS") was incorporated in Florida in 2004 and listed 1448 Holts Grove Circle, Winter Park, Florida. Liu admits that NCS supply filed entries for the importation of Steel Wire Hangers from the PRC from about May 10, 2005 through January 8, 2011. Liu admits that NCS was placed on Nationwide sanction for unpaid duties.

5. Liu admits that NC Supply Group, LLC ("NCSG") was incorporated in Florida in 2010 and listed 1448 Holts Grove Circle, Winter Park, Florida. Liu admits that NCSG filed entries for the importation of Steel Wire Hangers from the PRC from about March 12, 2005 through August 23, 2012. Liu admits that NCSG was dissolved on September 12, 2012.

6. Liu admits that Garment Cover Supply LLC ("GCS") was incorporated in Florida in 2013 and listed 707 E Colonial Dr, Ste B-110, Orlando, Florida. On information and belief, Liu admits that GCS filed entries for the importation of Steel Wire Hangers from Malaysia from about September

12, 2014 through February 14, 2017. Liu admits that NCSG was dissolved on February 15, 2017.

7. Liu admits that GL Paper was incorporated in Florida in 2016 and listed 707 E Colonial Dr, Ste B-110, Orlando, Florida. On information and belief, Liu admits that GL Paper filed entries for the importation of Steel Wire Hangers from Malaysia from about February 6, 2017 through August 15, 2017. On information and belief, Liu admits that GL Paper was dissolved on August 15, 2017.

8. Liu admits that AB MA was incorporated in Florida in 2018 and listed 1448 Holts Grove Circle, Winter Park, Florida. On information and belief, Liu admits that AB MA filed entries, or acted as consignee, for Steel Wire Hangers imported from the India or Thailand from about May 7, 2018 through April 25, 2019. Liu admits that NCSG was dissolved on January 17, 2020.

9. Liu admits that CEK was incorporated in Florida on January 9, 2012 and from April 18, 2019 through on or about November 11, 2020, CEK filed entries for the importation of Steel Wire Hangers produced in, and imported from Thailand. Liu admits that CKE was dissolved on December 17, 2020.

10. Liu admits that he formed companies to import steel wire hangers manufactured in a number of countries into the United States. Liu admits that steel wire hangers are sold throughout the United States and are primarily used in the dry-cleaning industry. Liu admits that he was knowledgeable about the import process. As Liu is not a licensed Customs House Broker, and thus legally not allowed to submit documents and records, Liu denies that he personally engaged in such process.

11. Liu is not in privity with the purported U.S. wire hanger manufacturer. Accordingly, Liu lacks knowledge or information sufficient to form a belief about the truth of this allegation. Based on information and belief and the documents submitted by the U.S. wire hanger manufacturer, such allegation accurate represents the nature of their filing.

12. Liu admits that a decision was issued by the U.S. International Trade Commission.

13. Liu admits that the U.S. Department of Commerce announced its final determination and set a China-Wide cash deposit rate. Liu denies that this was an antidumping duty rate, as it related to Cash Deposits, not liquidations.

14. Liu admits.

15. Liu admits that he communicated with third parties about the impact of the PRC antidumping duties and explored the possibility of importing steel wire hangers manufactured in countries other than the PRC. Liu denies that he set up new companies to import hangers from the PRC that were transshipped through other countries to avoid the payment of PRC antidumping duties. Liu denies that he formed, or caused to be formed, companies in the names of other individuals to conceal his operation of those companies.

16. Liu admits.

17. Liu admits that he signed a document as manager as a courtesy to the owners in connection with the winding up of GCS. Liu admits, to the best his knowledge, that GCS imported steel wire hangers from Malaysia that were manufactured in Malaysia. As such hangers were the product of Malaysia the allegation is not true.

18. Liu denies that he formed or caused the formation of GL Paper. Liu admits that the public documents do not disclose Liu's involvement with the company. Liu denies that he controlled or directed the operations of the company nor directed its entry of steel wire hangers into the United States. Liu is not in privity with the importer. Based on the documents supplied to Liu by the United States, Liu admits that these import

documents disclose that the hangers were manufactured in Malaysia. Liu denies that he did not exercise reasonable care and asserts that the statutory requirement for reasonable care does not apply to Liu. Liu is not in privity with GL Paper, and thus, Liu lacks knowledge or information sufficient to form a belief about the truth of the allegation that GCS[1] avoided paying the antidumping duty rate.

19. Liu was not named in the EAPA allegation brought against GL Paper nor an active participant in the matter. He was not aware of the details of the case nor of the nature of any responses. Based on the documents supplied by CBP, Liu admits.

20. This is a statement of facts based on documents provided to Liu by CBP. Liu admits.

21. Based on documents supplied by CBP to Liu, Liu admits that AB MA was formed 6 months after the dissolution of GL Paper. Liu denies that he formed AB MA using the name of another person and that he personally directed AB MA's importations of Steel Wire Hangers. Based on documents supplied by CBP to Liu, he admits that AB MA made 58 entires of steel wire handers or served as a consignee for wire hangers with a

---

[1] Paragraph 19 of the complaint alleged certain conduct on the part of GL Paper, and based on this conduct claimed that GCS avoided paying the antidumping duty.

claimed origin of India and Thailand. Based on information and belief, Liu denies that these hangers were manufactured in the PRC. Liu admits that hangers produced in India and Thailand are not subject to antidumping duties applied to products of PRC origin.

22. Liu admits that CEK imported steel wire garment hangers from Thailand that were manufactured in Thailand and that CEK was dissolved on December 17, 2020. Liu denies all of the other allegations in this paragraph.

23. Liu admits that CBP issued a pre-penalty notice to Liu and CEK.

24. Liu admits the allegations of paragraph 24.

25. Liu admits the allegations of paragraph 25.

26. Liu admits the allegations of paragraph 26.

27. Liu admits the allegations of paragraph 27.

28. See answers 1 to 27.

29. Denies.

30. Denies.

31. Denies and further submits that the domestic value was calculated contrary to law.

32. See answers 1 to 27.

33. Denies that the statements constituted grossly negligent violations.

34. Denies.

35. Denies and further submits that the domestic value was calculated contrary to law.

36. See answers 1 to 27.

37. Denies that the statements constituted negligent violations.

38. Denies.

39. Denies and further submits that the domestic value was calculated contrary to law.

In this answer, Liu also sets forth its affirmative defense.

Pursuant to Rule 8(d)(1) is that the complaint fails to state a claim for which relief may be granted. Specifically, the complaint fails to provide sufficient detail as to the purported conduct which establish fraud, and with respect to Liu, the sole claim is that Liu failed to exercise reasonable care.

Accordingly, by means of this answer, the United States is placed on notice as to such affirmative defense, and such defenses will be fully enumerated in a motion to dismiss.

                                              Respectfully Submitted,

                                              /s/   David J. Craven

                                              David J. Craven

                                              Craven Trade Law LLC
                                              3744 N Ashland Avenue
                                              Chicago, IL 606013
                                              (773) 709-8506

                                              Counsel to Zhe "John" Liu and CEK Group

Dated:  November 11, 2025